UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN E. ALPHONSE, JR.                    CIVIL ACTION

VERSUS                                    NO. 12-330

ARCH BAY HOLDINGS, LLC, ET AL             SECTION "C" (4)

ORDER AND REASONS

This matter comes before the Court on the issue of subject matter jurisdiction and whether the remaining state law claims should be dismissed under 28 U.S.C. § 1367(c). Having considered the record, the memoranda of counsel and the law, the Court dismisses the remaining claims against Arch Bay Holdings, L.L.C. ("Arch Bay") and Specialized Loans Servicing, L.L.C. ("SLS") for lack of subject matter jurisdiction under Section 1367(c).

The salient facts are set forth in the Fifth Circuit opinion in this matter, 548 Fed. Appx. 979 (5th Cir. 2013). On the defendants' second motion to dismiss, this Court dismissed all claims under the Federal Debt Collection Practices Act ("FDCPA") and Louisiana Unfair Trade Practices Act ("LUTPA") and the plaintiff appealed in February 2013. 2013 WL 55911 (E.D.La). Among the holdings appealed was that the plaintiff sued the wrong party because Arch Bay-Series 2010B ("Series 2010B"), Arch Bay's subsidiary, initiated the foreclosure proceedings and held the note. 2013 WL 55911 at **4–5. This Court also dismissed all FDCPA claims against both defendants Arch Bay

and SLS, leaving no federal claims pending.  *Id.* at *6.  On appeal, the Fifth Circuit acknowledged that the plaintiff did not "press" the dismissal of his FDCPA claims on appeal and considered only the dismissal of LUTPA claims against Arch Bay and SLS.[1] 548 Fed. Appx. at 981.

The Fifth Circuit reversed and remanded for further factual development distinct issues relating to *res judicata*, specifically, whether there exists sufficient 'identity of the parties' between Arch Bay (the parent company) and Series 2010 B (the judgment creditor) as well as between SLS (the mortgage servicer) and Series 2010B,"[2] and whether "Series 2010B is in fact a distinct juridical entity."  548 Fed. Appx. at 982–84. The Fifth Circuit also held "dismissal under Federal Rule of Civil Procedure 12 without leave to amend was error" because the Court failed to consider "whether liability as between a third-party plaintiff with respect to a holding company LLC or its Series LLC constitutes internal or external affairs."  548 Fed. Appx. at 986.  The remand order included the specific instruction for this Court to "consider the external–internal affairs conflict-of-law question under Louisiana law."  548 Fed. Appx. at 986.

---

[1] Under the waiver doctrine, an issue that could have been raised on appeal but was not raised are barred from consideration on remand.  *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). Therefore, the any challenge to the dismissal of the FDCPA claims has been forfeited by the plaintiff and those claims remain dismissed.  Rec. Doc. 133.

[2] The parties agreed on appeal that this Court's dismissal based on the *Rooker-Feldman* doctrine was erroneous in light of the interim ruling in *Truong v. Bank of America, N.A.*, 717 F.3d 377 (5th Cir. 2013).

In conjunction with a pre-appeal motion to dismiss in July 2012, this Court advised that it "will need to revisit the issue of subject matter jurisdiction in the event that plaintiff's claims under the FDCPA are dismissed," and that "[i]f that need arises, this Court will need the citizenship of the defendants specified in accordance with the rule set forth in *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008)." 2012 WL 3096033 (E.D.La). It ordered that "[f]acts relevant to citizenship should be specifically pled in any amendment."

The plaintiff's amended and supplemental complaint did not provide what *Harvey* requires. Rec. Doc. 33. The Court again ordered compliance in order to determine whether diversity of citizenship exists and SLS was determined to be diverse. Rec. Docs. 104, 111. In his first response, the plaintiff complained that the defendants objected to his 2014 discovery requests regarding their citizenship and offered that "it is unlikely" that any defendant is a Louisiana citizen.[3] Rec. Doc. 119 at 5. The defendants offered to stipulate to diversity rather than divulge the citizenship of Arch Bay. Rec. Docs. 118, 124 at 2. The Court issued additional orders for compliance, continued the pre-trial conference and the trial, and issued a stay until the issue of diversity was resolved. Rec. Docs. 129, 133, 138. Shortly thereafter, information was discovered that

---

[3] The plaintiff did not file a motion to compel in response to the defendants' objection to the discovery of this information until the Court issued additional orders for compliance. Rec. Doc. 142.

Arch Bay is <u>not</u> diverse. Rec. Docs. 135–37, 159, 164. It took the parties over two years and several orders to provide this basic information.

The issue now presented is whether this Court should maintain supplemental jurisdiction under 28 U.S.C. § 1367( c), which provides as follows:

> The district courts may decline to exercise supplemental jurisdiction over a [state law] claim if –
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition to these statutory provisions, the balance of the relevant factors of judicial economy, convenience, fairness and comity identified by the Supreme Court in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350–53 (1988) and *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), should be considered when determining the propriety of dismissal. *Batiste v Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). No single factor is determinative but, generally, district courts decline jurisdiction over pendent state law claims if all federal claims are eliminated prior to trial. *Id.*

Here, all the statutory factors weigh in favor of the dismissal of the remaining state law claims. The plaintiff repeatedly states that the viability of the claims he is

attempting to make is a "matter of first impression" under Louisiana law. Rec. Doc. 125 at 4, 6. Moreover, he is essentially challenging the effect of a completed foreclosure proceeding in state court, while maintaining that the foreclosure was based on an incomplete instrument and faulty corporate entities according to Louisiana law. Rec. Doc. 122 at 15. "The significant inquiry this Court must answer therefore, is whether and to what degree Alphonse's claims herein could have been settled, litigated or adjudicated in the underlying foreclosure procedure." Rec. Doc. 122 at 13-14. The plaintiff's claims present extremely novel, complex and fluid issues of Louisiana law. As previously stated, the Court's concern in July 2012 and now is the same: these alleged state law claims ask for pronouncements of Louisiana law that are more appropriately addressed to a Louisiana state court. Rec. Doc. 133 at 4.

The Court finds that the balance of the factors of judicial economy, convenience, fairness and comity also weigh in favor of declining to exercise jurisdiction. Although it is argued that this case was filed in 2012 and has been appealed, the necessity of diversity jurisdiction over the state claims was announced within months of the commencement of suit. Although some discovery has been undertaken since remand, the record reflects that the plaintiff recently moved for a continuance of trial in order to undertake more discovery to identify the alleged "man behind the curtain." Rec. Doc.

114-1 at 11. The viability of the claims and the *res judicata* effect of the state law judgment has not been determined. The Court finds that judicial economy, convenience, fairness and comity are not served by maintaining federal jurisdiction or a jury trial on the remaining state law claims, the viability of which will inevitably need to be recognized by the state courts.

      More significant, however, is the fact that the Court first advised the parties in 2012 of its concern over the viability of the federal claims and the need for an independent basis of jurisdiction over the state claims. The Court's concern about the viability of the federal claims was actualized in February 2013 when the plaintiff decided not to appeal the Court's dismissal of those claims. Whether or not the federal claims were formed to fit a federal mold because of the plaintiff's possible preference for a federal forum for his state law monetary attack on state court foreclosures, those federal claims were short-lived. All parties' subsequent conduct and delay in providing information about citizenship appears to be a deliberate refusal to follow the Court's orders in order to protect supplemental jurisdiction, as further evidenced by the parties' ill-fated willingness to consent to diversity subject matter jurisdiction where none exists. Rec. Docs. 118– 119, 124, 135. In this regard, the Supreme Court specifically advised that the Court can consider whether the parties have engaged in any "manipulative tactics"

when it decides whether to exercise supplemental jurisdiction. *Carnegie-Mellon*, 484 U.S. at 622–23. At a minimum, the manipulative tactics presented here weigh heavily in favor of dismissal under Section 1367( c). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726.

Accordingly,

IT IS ORDERED that the remaining claims are DISMISSED without prejudice under 28 U.S.C. § 1367( c). The Court declines to exercise supplemental jurisdiction over those claims.

New Orleans, Louisiana, this 24th day of November, 2014.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE